O

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### EASTERN DIVISION

| | |
|---|---|
| JOSE QUINTANA, | Case No. EDCV 06-00858-MLG |
| Plaintiff, | MEMORANDUM OPINION AND ORDER |
| v. | |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | |
| Defendant. | |

Plaintiff Jose Quintana seeks judicial review of the Commissioner's denial of his application for Disability Insurance ("SSDI") benefits and Supplemental Security Income ("SSI") benefits under the Social Security Act. For the reasons stated below, the decision of the Social Security Commissioner is **AFFIRMED**.

**I. Facts and Procedural History**

Plaintiff was born on April 4, 1966 and is currently 42 years old (Administrative Record ("AR") 937). He has a sixth grade education (AR 20). Plaintiff's work history includes employment as a carpenter,

assistant mechanic, and construction laborer. (AR 977.) Plaintiff alleges a disability onset date of July 1, 1997, due to cervicothoracic spine disorder, hepatitis, and depressive disorder with psychophysiological reaction to pain, resulting from a fall. (Joint Stipulation ("Joint Stip.") 2.)

Plaintiff first filed an application for SSDI and SSI benefits on February 12, 1999, which the Commissioner denied initially and on reconsideration. (Joint Stip. 2.) Administrative Law Judge ("ALJ") Charles E. Stevenson held a hearing on October 12, 1999, at which Plaintiff testified and was not represented by counsel.[1] (AR 15-20.) The ALJ denied Plaintiff's application on April 5, 2000, applying the five-step sequential analysis mandated by the Social Security Regulations.[2] (*Id.*) After the Appeals Council denied Plaintiff's request for review of the decision on September 24, 2001, Plaintiff filed a lawsuit in this Court on November 6, 2001, *Quintana v. Barnhart*, No. EDCV 01-896-MLG. This Court issued an order reversing the Commissioner's decision and remanding the case on August 20, 2002.

In the meantime, Plaintiff filed a new SSDI application on April 12, 2000, which the Commissioner denied initially and on reconsideration. After a hearing held on February 20, 2002, ALJ Mason D.

---

[1] The Joint Stipulation incorrectly states that this hearing occurred on April 5, 2000, before ALJ Lowell Fortune. (Joint Stip. 2.) The record shows that the hearing actually took place on October 12, 1999, before ALJ Charles E. Stevenson. (AR 15-20.)

[2] The five steps the ALJ must consider are as follows: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant's impairment is "severe"; (3) whether the impairment meets or equals one of the listings in 20 C.F.R. § 404, Subpart P, Appendix 1; (4) whether the claimant is able to return to past relevant work; and (5) whether the claimant can do other types of work. 20 C.F.R. § 404.1520(a)(4). These steps are cumulative, meaning that the ALJ need not consider further steps after finding that a step does not favor the claimant.

Harrel, Jr., denied Plaintiff's application on March 11, 2002. (AR 415.) On September 8, 2003, the Appeals Council granted review of the denial and consolidated Plaintiff's two applications for remand to ALJ Harrel. (AR 480.) A third hearing was held on February 24, 2004, with a supplemental hearing held on May 25, 2004. (AR 276-77.) The ALJ again denied Plaintiff's application on June 6, 2004. (AR 276-82.) Thereafter, Plaintiff filed a second lawsuit in this Court, *Quintana v. Barnhart*, No. 04-1070-MLG. On July 31, 2004, Plaintiff filed another application for SSDI and SSI benefits, which the Commissioner denied initially and upon review. (Joint Stip. 3.) On March 30, 2005, this Court entered a stipulated order remanding the case for further administrative proceedings, to be consolidated with Plaintiff's appeal of the Commissioner's denial of his July 31, 2004, application.

On February 7, 2006, Plaintiff appeared for a fifth hearing before ALJ Joseph D. Schloss. The ALJ denied Plaintiff's consolidated application on May 22, 2006. (AR 852-58.) Plaintiff filed this action on August 16, 2006. After determining that the cassette tape recording of the February 7 hearing was blank, the parties stipulated to remand the case for a new hearing on September 27, 2006. (Dkt. 12.)

A sixth hearing was held on August 1, 2007, and ALJ Lowell Fortune denied Plaintiff's application on September 18, 2007. (AR 825.) The ALJ found that Plaintiff had several severe impairments, including cervicothoracic spine disorder, hepatitis, and depressive disorder, not otherwise specified, with psychophysiological reaction to pain. (AR 828.) The ALJ determined that Plaintiff's impairments did not meet or equal any listed impairment, then found that Plaintiff had the residual functional capacity ("RFC") to perform light work with the following limitations:

> The Claimant should have the option to change positions between sitting and standing every sixty minutes, the change itself to last no more than three minutes. The Claimant is occasionally able to balance, kneel, stoop, crouch, or crawl. He should avoid all exposure to hazards such as dangerous or fast-moving machinery and unprotected heights. Mentally, he is able to perform simple repetitive tasks in a habituated work setting. The job should not involve intense concentration, or production-rate pace work, such as assembly line work. The work should not involve safety operations, any responsibility for the safety of others, and no hypervigilence. He is, and has been, able to interact appropriately with coworkers, supervisors, and the general public within the context of these limits.

(AR 833.)

In reaching the RFC determination, the ALJ rejected the treating physician's opinion regarding the extent of Plaintiff's impairments, relying instead on state agency physicians' opinions. (AR 836-38.) The ALJ concluded that Plaintiff could not return to his past relevant work as a carpenter or construction worker with the above limitations. (AR 838.) The ALJ relied on the vocational expert's testimony at the hearing that those limitations would not prevent Plaintiff from working as a cleaner, garment sorter, or bench assembly worker, and determined that Plaintiff was not disabled as defined by the Social Security Act at any time through the date of the decision. (AR 839).

After the ALJ denied Plaintiff's application, the parties filed a stipulation to reopen the present case, which the Court granted on February 25, 2008. The parties filed a joint stipulation of disputed

issues on August 5, 2008, in which Plaintiff alleges that the ALJ erred: (1) by improperly rejecting the treating physician's opinion as to the side effects of Plaintiff's medication; (2) by failing to properly consider the type, dosage, effectiveness, and side effects of Plaintiff's medication; (3) by misinterpreting Plaintiff's GAF rating; and (4) by posing an incomplete hypothetical to the vocational expert who testified at the hearing. (Joint Stip. 3-4.) Plaintiff asks this Court to order an award of benefits, or, in the alternative, to remand for a new administrative hearing. (Joint Stip. 15.)

**II.  Standard of Review**

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits. The Commissioner's or ALJ's decision must be upheld if it is "supported by 'substantial evidence' and if the proper legal standard was applied." *Mayes v. Massanari*, 276 F.3d 453, 458-59 (9th Cir. 2001). Substantial evidence means such evidence as a reasonable person might accept as adequate to support a conclusion. *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007). It is more than a scintilla, but less than a preponderance. *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006). To determine whether substantial evidence supports a finding, the reviewing court "must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1996). "If the evidence can support either affirming or reversing the ALJ's conclusion," the reviewing court "may not substitute [its] judgment for that of the ALJ." *Robbins*, 466 F.3d at 882.

//

**III. Discussion**

    **A.    The ALJ Properly Considered the Treating Physician's Opinion Regarding Side Effects**

Plaintiff contends that the ALJ did not adequately consider the treating physician's opinion that Plaintiff experienced side effects from medication. (Joint Stip. 4-5.) Specifically, Martha Melendez, M.D., stated that Plaintiff's medications were very sedating and inhibited his concentration. (AR 754.) Additionally, Dr. Melendez noted on January 5, 2007:

> We have attempted to use stronger medications in the past including Duragesic patch, Feldene, and Darvon. However, he finds these medications too sedating. They worsen his depression and make him feel drunk.

(AR 1089.)

The ALJ should generally accord greater probative weight to a treating physician's opinion than to opinions from non-treating sources. *See* 20 C.F.R. § 404.1527(d)(2). The ALJ must give specific and legitimate reasons for rejecting a treating physician's opinion in favor of a non-treating physician's contradictory opinion. *Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). The ALJ need not accept the opinion of any medical source, including a treating medical source, "if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002); *accord Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001).

The ALJ gave several reasons for disregarding Dr. Melendez's opinion as to the severity of Plaintiff's impairments generally, including: (1) that Dr. Melendez' diagnoses and assessments were not

supported by the clinical findings or Plaintiff's medical history; (2) that Dr. Melendez' functional assessments were based on Plaintiff's subjective reports rather than objective medical findings; (3) that the severity of impairment as Dr. Melendez diagnosed should have caused atrophy, loss of reflex, or neurological changes, of which the record contained no evidence; (4) that Dr. Melendez noted muscle spasms in Plaintiff's back, but three other medical examiners could find no objective evidence of such spasms; (5) that Dr. Melendez noted only mild exacerbation of back pain after Plaintiff drove for an extended period; (6) that Dr. Melendez on one form indicated that Plaintiff was disabled at the same time her treatment notes stated, "He is actually doing okay. He says he is functional." (AR 836-37.)

Notably, Plaintiff does not argue that the ALJ's reliance on these reasons was improper or without support from the record. Instead, Plaintiff argues that the ALJ did not provide specific and legitimate reasons for rejecting Dr. Melendez's opinion specifically as to the side effects of medication, and that his failure to do so warrants remand. In other words, Plaintiff contends that because Dr. Melendez twice noted that Plaintiff's medication makes him drowsy, the ALJ should have provided a precise explanation not only as to why Dr. Melendez's opinion in general was unreliable, but also why her opinion as to this one symptom was unreliable. Plaintiff's argument is without merit.

Although the ALJ must give specific and legitimate reasons for disregarding a treating physician's opinion, the ALJ is not required to address every detail of the physician's treatment notes or every piece of evidence in the record in reaching a disability determination. *Senko v. Astrue*, 2008 WL 21785997 at *1, (9th Cir. 2008); *Howard v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003). The ALJ provided ample specific and

legitimate reasons, supported by substantial evidence in the record, for discounting Dr. Melendez's opinion in favor of the examining physicians. His failure to mention a minor notation in Plaintiff's voluminous medical records is not fatal to his decision. Plaintiff is not entitled to relief on this claim.

**B.   The ALJ Properly Considered the Type, Dosage, and Side Effects of Plaintiff's Medications**

Plaintiff argues that the ALJ failed to properly consider his drowsiness, an alleged side effect of his medication, as required by Social Security Ruling ("SSR") 96-7p, 1996 WL 374186 (S.S.A. 1996). (Joint Stip. 8.) Plaintiff relies on *Varney v. Secretary of Health & Human Services*, 846 F.2d 581 (9th Cir. 1988), arguing that "like pain, side effects can be a 'highly idiosyncratic phenomenon' and a claimant's testimony as to their limiting effects should not be trivialized." (Joint Stip. 8.)

In making this argument, Plaintiff overlooks a key element of the analysis: he failed to even mention to the ALJ that side effects from medication prevented him from working. Plaintiff discussed medication only once during the most recent hearing, and he said nothing of debilitating side effects. The transcript states as follows:

Q   Okay. Do you have the pain all the time during the day or is there some time when you don't have any pain in your back?

A   It's always. It's always there except like when I take medication it kind of, it's slight but it's there.

Q   Okay so are you saying that the pain is constant in your back but that the pain, but that the medicine helps it a little bit?

8

```
1       A    Yes.
2       Q    And has this been the case for the, all the time for the
3            past ten years?
4       A    Yes.
```
(AR 1157-58.) Plaintiff made no other reference to medication during the hearing, and no reference at all to any side effects.

Looking at the hearing transcripts in the record, it is clear that Plaintiff has almost entirely omitted mention of side effects during the hearings. Plaintiff said nothing of side effects at his first hearing, on August 12, 1999. Plaintiff did mention side effects during the second hearing on February 20, 2002, testifying that Tylenol 3 made him groggy and dizzy. (AR 463.) The ALJ presiding over that hearing, Mason D. Harrel, Jr., noted in his decision that Plaintiff "takes medication which tires him," then denied Plaintiff's application, stating, "The claimant's subjective complaints credibly establish no less of a residual functional capacity than described above." (AR 415.) Although the Appeals Council remanded the matter back to ALJ Harrel for reconsideration for other reasons, Plaintiff made no effort to emphasize the side effects of medication from that point until this litigation. Plaintiff did not bring up side effects, drowsiness, grogginess, or dizziness at the subsequent hearings on February 24, 2004, May 25, 2004, May 22, 2006,[3] or at the most recent hearing.

---

[3] The Court notes that the record does not contain the transcript for the May 22, 2006, hearing, because the cassette tape recording of the hearing was blank, as discussed above. However, the ALJ included in his decision a detailed discussion of the complaints to which Plaintiff testified at the hearing, and he did not mention side effects or drowsiness. If the ALJ inadvertently omitted Plaintiff's hearing testimony as to side effects from the decision, it does not appear that Plaintiff has ever raised the issue, which further supports the Court's conclusion that Plaintiff has never, until now, emphasized any alleged side effects from medication.

The only mention of side effects that Plaintiff identifies is Dr. Melendez's treatment note that Plaintiff had previously been prescribed medication that made him "too sedated, worsened his depression and made him feel 'drunk.'" (Joint Stip. 8.) As discussed above, the ALJ properly rejected Dr. Melendez's opinion in reaching the disability determination. Moreover, Plaintiff does not dispute Defendant's contention that "Plaintiff did not complain of sedation, worsening depression symptoms, or an inebriated feeling" in the treatment notes, or that "[f]ollow-up visits show that Plaintiff denied any side effects from his prescription medications." (Joint Stip. 10.)

Plaintiff bears the burden of establishing that he is unable to engage in any kind of substantial gainful work. *Matthews v. Shalala*, 10 F.3d 678, 680 (9th Cir. 1993)(citing 42 U.S.C. § 423(d)(1)(A)). The regulations instruct claimants as follows:

> You must provide medical evidence showing you have an impairment(s) and how severe it is during the time you say that you are disabled. You must provide evidence, without redaction, showing how your impairment(s) affects your functioning during the time you say that you are disabled....

20 C.F.R. § 404.1512(c). A treating physician's passing reference to side effects not otherwise supported by the record is insufficient to establish or even suggest disability under the Social Security Act. *See Matthews*, 10 F.3d at 680 ("The mere existence of an impairment is insufficient proof of a disability.")(citation omitted).

The Court also notes that the regulations do not require an ALJ to consider a claimant's medications as part of every disability determination. The mere fact that a claimant takes a certain medication, in and of itself, is not evidence that the claimant also experiences any

one of the myriad possible side effects from that medication. Further, a simple recitation of potential side effects from a particular medication does not establish that *this* claimant experiences *these* side effects, which prevents him or her from working for *these* reasons. This specific information must be presented to the ALJ as part of the claimant's burden to demonstrate disability. If a claimant's medications prevent him from working, he has to say so. Only at that point does the type, dosage, effectiveness, and side effects of medication become relevant, so the ALJ can evaluate the claimant's credibility. As the regulations make clear, the ALJ must consider these factors only "[w]hen additional information is needed to assess the credibility of the individual's statements about symptoms and their effects," because "the adjudicator must make every reasonable effort to obtain available information that could shed light on the credibility of the individual's statements." SSR 96-7p, 1996 WL 374186, at *3 (S.S.A. 1996). Absent an individual's statements of impairment at the outset, the ALJ has no duty to inquire as to the claimant's medications.

In this case, Plaintiff briefly testified that he experienced side effects from medication at just one of his six hearings, back in 2002. Plaintiff has otherwise made no effort to show either that he experienced any significant side effects or that those side effects were sufficiently severe as to preclude him from working. After four subsequent hearings and two lawsuits, where it does not appear that side effects ever came up, Plaintiff cannot now assert that the ALJ failed to provide adequate consideration to an issue that he himself failed to raise in any meaningful way.

The Court concludes that Plaintiff has failed to demonstrate that side effects from his medication precluded him from engaging in any

substantial gainful activity. More importantly, he failed to fairly present the issue to the ALJ, so the ALJ could adequately consider it the first time around. The ALJ did not err by reaching his disability determination without further analyzing the type, dosage, and side effects of Plaintiff's medication.

### C. The ALJ's Treatment of Plaintiff's Global Assessment of Functioning Rating Was Not Error

Plaintiff contends that the ALJ erred in his treatment of a recent Global Assessment of Functioning ("GAF") rating. (Joint Stip. 11.) Plaintiff identifies as improper the following statement of the ALJ:

> At the time of an apparent certification of medical necessity for treatment in May 2007, the treating source diagnosed major depressive disorder, recurrent, severe, without psychotic features and assessed a GAF score of 49, which would indicate serious limitation in one area of functioning and otherwise moderate limitation while noting the claimant was unemployed and isolating himself, but there were no legible clinical notes or even a check list of clinical findings.

(AR 832; Joint Stip. 11.)

The GAF Scale provides a measure for an individual's overall level of psychological, social, and occupational functioning. Am. Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders* 30 (4th ed. 1994). The Scale "may be particularly useful in tracking the clinical progress of individuals in global terms, using a single measure." *Id.* A GAF range of 41-50 reflects "[s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." *Id.* at 32. In evaluating the

12

severity of a claimant's mental impairments, a GAF score may help guide an ALJ's determination, but an ALJ is not bound to consider it. *Orellana v. Astrue*, 2008 WL 398834, at *9 (E.D. Cal. Feb. 12, 2008)("While a GAF score may help the ALJ assess Claimant's ability to work, it is not essential and the ALJ's failure to rely on the GAF does not constitute an improper application of the law."); *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 241 (6th Cir. 2002)("While a GAF score may be of considerable help to the ALJ in formulating the RFC, it is not essential to the RFC's accuracy. Thus, the ALJ's failure to reference the GAF score in the RFC, standing alone, does not make the RFC inaccurate.").

In the present case, the ALJ did not completely ignore Plaintiff's GAF as assessed in May 2007. Instead, he noted Plaintiff's GAF score, acknowledged that such a score would indicate "serious limitation" in functioning, and ultimately rejected it, because the physician failed to provide any support for his assessment. (AR 832.) As discussed above, the ALJ need not accept the opinion of any medical source, including a treating medical source, "if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002); *accord Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001). The ALJ was not required to incorporate Plaintiff's GAF into his analysis, and he properly disregarded it in any event. Plaintiff's claim is without merit.

**D.    The ALJ Posed a Proper Hypothetical to the Vocational Expert**

Plaintiff contends that the ALJ's hypothetical to the vocational expert improperly omitted reference to the side effects Plaintiff claims to experience from his medication. (Joint Stip. 13.) A hypothetical posed to a vocational expert must contain all the limitations of a particular claimant. *DeLorme v. Sullivan*, 924 F.2d 841, 850 (9th Cir.

13

1991)(citations omitted). If the hypothetical fails to reflect all of the claimant's limitations, the vocational expert's testimony cannot support a finding that the claimant could perform jobs in the national economy. *See id.* However, the ALJ need only include in the hypothetical those limitations that are supported by substantial evidence in the record. *Osenbrock v. Apfel*, 240 F.3d 1157, 1164-65 (9th Cir. 2001).

The ALJ properly rejected Dr. Melendez's opinion as to Plaintiff's claimed impairments and symptoms, and Plaintiff failed to fairly raise the issue of side effects for the ALJ even to consider. This limitation is not supported by substantial evidence in the record. Accordingly, the ALJ appropriately omitted reference to Plaintiff's alleged side effects. Plaintiff is not entitled to relief on this claim.

**IV.  Conclusion**

For the reasons stated above, the decision of the Social Security Commissioner is **AFFIRMED**.

DATED: August 15, 2008

_____
MARC L. GOLDMAN
United States Magistrate Judge